LIPSCOMB v. SEEGERS.

1. The superintendent of the penitentiary may sue in his own name for the amounts due to the State by a hirer of convicts, on account of the loss of so many of them as were permitted to escape.
2. Since 1878 the superintendent of the penitentiary holds his office under election by the general assembly, and not by executive appointment. The act of 1878 (16 *Stat.* 702) was, in effect, an amendment of the General Statutes, which had repealed the act of 1868, but, at the same time, re-enacted its provisions.
3. A statute permitted the hiring of convicts, upon bond being given for their safe keeping, and the statute provided that the person so hiring should forfeit and pay to the State the sum of fifty dollars per annum for each year of the unexpired term of any convict who escaped through the negligence of the hirer. One of the directors hired convicts upon these terms, but did not give the required bond. *Held*, that he was liable for convicts negligently permitted to escape.
4. The amount of fifty dollars stated as a forfeit for each year of the unexpired term of the escaped convict was not a technical penalty, but stipulated damages, and action therefor was not barred in two years.
5. This fifty dollars was the rate per annum fixed upon as compensation to the State for the loss, and for fractions of a year the amount would be a proportionate sum.

---

Before WITHERSPOON, J., Richland, July, 1882.

The opinion states the case. The brief does not contain the judge's charge in full, but only so much thereof as is complained of in the exceptions, which correctly state the propositions charged and those requested and declined.

*Mr. J. D. Pope*, for plaintiff.

*Messrs. Melton, Clark & Muller,* contra.

June 29th, 1883. The opinion of the court was delivered by
Mr. Justice McGowan. This was an action brought by
T. J. Lipscomb, superintendent of the penitentiary, against
John C. Seegers, for $1,100, alleged to be due the State on
account of five convicts, which the said Seegers hired from the
superintendent, and negligently allowed to escape while in his
employment. In the year 1879, Seegers, being at that time one
of the directors of the penitentiary, entered into an agreement
with the superintendent to hire thirty male convicts to work on
a farm in the neighborhood of Columbia. During the year,
five of them escaped, and this action was for the damages
thereby caused to the State.

The complaint alleged : " 1. That by the tenth section of the
act of assembly entitled 'An act to utilize the convict labor of
the State,' as amended and approved March 1st, 1878, it was,
among other things, provided as follows : ' That the contractor
or company hiring said convicts shall enter into a bond payable
to the State, in the sum of ten thousand dollars for every hun-
dred convicts, and a bond in like proportion for a less number,
for the safe keeping of the convicts ; and for each convict that
shall escape through negligence of any kind, the contractor or
company shall forfeit and pay to the State therefor the sum of
fifty dollars per annum for each year of the unexpired term of
the sentence of such escaped convict ; provided, further, that if
the convict shall be captured within two months and returned
to work free of cost to the State, no penalty shall attach.' 2.
That some time thereafter the said defendant, who then was one
of the directors of the penitentiary, did, under the provisions of
the said act, agree to hire thirty male convicts, for which he
agreed to pay $3.66 per month per capita. 3. That in pursu-
ance of said agreement the said convicts were delivered to the
said defendant on or about the 20th day of January, 1879, but
the defendant did not then secure, and has not since secured the
State by entering into a bond for the forfeiture imposed by the
said act for the safe keeping of the said convicts which were
delivered to and received by him as aforesaid. 4. That the

said defendant did not safely keep the said convicts, but negligently did suffer five of them so hired, by deed delivered to him, to escape. The several names of the said escaped convicts, their several terms of sentence, the several dates of their delivery to defendant, and the several dates of their escape, being as hereinafter set forth," &c.

After stating the names of the five who escaped, the different times at which they respectively escaped, and the unexpired term of the sentence of each, the plaintiff demanded judgment for the aggregate amount of $1,100.

The defendant demurred to the complaint upon two grounds: First, that the plaintiff was not superintendent of the penitentiary and had not legal capacity as such to sue; and second, that the complaint did not state facts sufficient to constitute a cause of action. Judge Wallace overruled the demurrer, and granted leave to the defendant to answer. He excepted, but, reserving his exceptions, answered, denying the plaintiff's capacity to sue, denying that he agreed to hire the convicts in accordance with the requirements of the "Act to utilize the convict labor of the State," and, also, denying that any of the hired convicts escaped through negligence. Upon these pleadings the case came on for trial before Judge Witherspoon. After the pleadings were read the judge allowed the defendant to amend his answer by pleading the statute of limitations, applicable to an " action upon a statute for a forfeiture or penalty to the State."

It appeared that the plaintiff had been elected superintendent of the penitentiary by the legislature, and he produced two commissions as such—the first bearing date January 3d, 1879, and the other, April 14th, 1882; that as such superintendent he entered into an agreement with the defendant, Seegers, to hire him thirty male convicts for the year 1879; that the contract was according to the requirements of the act upon the subject; that Seegers was to be responsible for the safe keeping of the hired convicts; that the contract and bond, as required by law, were reduced to writing, and handed to Seegers to be signed by him, but he failed to sign the papers, although the convicts had been delivered to him on the faith of the said agreement.

There was some proof as to the time and circumstances under which the different convicts had escaped from the farm.

The Circuit judge held that the amounts sought to be recovered on account of the escape of the convicts, were technical penalties imposed by statute, and as it appeared from the face of the complaint that the action had not been brought within two years and three months after the escape of any of the convicts, except that of David Spry, he sustained the plea of the statute of limitations as barring the action as to the sums alleged to be due on account of the escapes of all the convicts, except the said Spry. The case went to the jury only on this one (Spry's) item of the claim.

When Spry escaped, the unexpired term of his sentence in the penitentiary was something less than three years, viz., two years, one month and twenty days; but the plaintiff claimed damages to the extent of $150, being $50 each for three full years, insisting that the act, which was embraced in the contract, takes no account of fractions of a year, but requires that the contractor shall pay for the negligent escape of a convict "the sum of fifty dollars per annum for each year of the unexpired term of the sentence of such escaped convicts," &c.; whilst the defendant insisted that if he should be held liable at all he ought to be charged only for the actual unexpired term of the convict's sentence, at the rate of $50 per annum. The judge charged in accordance with the defendant's view, and the plaintiff had a verdict, not for $150 compensation for three full years, but for the actual time lost by the escape, $104. Both the plaintiff and defendant appeal to this court.

The defendant's exceptions: "1. For that his Honor refused to charge the jury as requested by the defendant, that if they believe from the evidence that the plaintiff was elected by the general assembly and not appointed by the governor, superintendent of the penitentiary, then he was not *de jure* superintendent and could not sustain this action. 2. For that his Honor refused the defendant's motion to dismiss the complaint on the ground that it did not state facts sufficient to constitute a cause of action. 3. For that his Honor charged the jury, that if they believed from the evidence that this action was com-

menced within two years after the expiration of three months from the escape of the convict, David Spry, then the defense of the statute of limitations set up in the answer did not apply so far as regarded the forfeiture claimed on account of the escape of that convict," &c.

The plaintiff's exceptions, for the purposes of this case may be condensed into the following:

"1. Because the agreement of the parties, although not reduced to writing, and the bond not given by defendant's own fault, was nevertheless made with reference to the provisions of the act upon the subject; and when the convicts were delivered to and received by the defendant under that agreement he was bound by all the provisions of the law embodied in that agreement.

"2. Because his Honor erred in refusing to charge that the act authorizing the contract and its terms, and the sums to be forfeited under it, does not create a penalty imposed by statute, but, on the contrary, was clearly intended to define and limit the amount of damages for which any 'contractor or company,' should be held liable in the event of the violation of the stipulations, not of the act, but of the contracts made in pursuance of the requirements of such law, and as such the amounts so limited constitute stated damages and not a penalty.

"3. Because his Honor refused to charge that a year was the minimum of the division of time authorized by the act, and the fifty dollars each year applies in whole to every year and the fractional part of any year of the unexpired term of the sentence of the escaped convict, until the maximum of two hundred and fifty dollars shall be reached," &c.

As to the exceptions of the defendant, and first as to the legal capacity of the plaintiff to sue as superintendent of the State penitentiary. The state of the law upon the subject is as follows: The act of 1868 provided that the penitentiary should be under the direction of a superintendent to be appointed by the governor, by and with the advice and consent of the senate, and also provided, "That all actions or suits at law for the recovery of any debt or demand accruing from the business transactions of the penitentiary, or for the recovery of damages for injuries

done to any of the property or effects of said prison, shall be brought and maintained in the name of the superintendent thereof for the time being; and the said superintendent is authorized and empowered to sue for and collect all such claims and demands, of every description, now due or which may hereafter become due and payable on account of said prison." *Act of* 1868, § 12, 14 *Stat.* 94; *Gen. Stat.* 763. The act of 1868 was expressly repealed by the general statutes (1872), but the provisions cited were re-enacted therein.

In 1877 an act was passed "to utilize the convict labor of the State," which authorized the board of directors to lease or hire out the convicts upon certain terms. 16 *Stat.* 264. In 1878 an act was passed to amend the act of 1877 by adding thereto several sections, and providing that the superintendent should be elected by the legislature. 16 *Stat.* 393 and 702. Under this act the plaintiff was elected superintendent by the legislature, and has his commission as such officer signed by the governor. It is said, however, that the last act of 1878, changing the mode of the appointment of superintendent, is not and never was law, for the reason that it purported to be an amendment of the old law of 1868, which gave the appointment to the governor, but which law had been expressly repealed by the general statutes, and that an attempted amendment to a law repealed is itself necessarily void. If such were the case the effect would be that we have no such officer as the superintendent of the State penitentiary, for the law authorizing his appointment by the governor has been expressly repealed, and that requiring him to be elected by the legislature is void.

But, fortunately, such is not the correct view. The amending act of 1878 does not, in express terms, refer to the act of 1868 as such. It is true, the act of 1868 was repealed by the general statutes, but, as before stated, its provisions, in terms, were re-enacted therein, and the amendment of 1878 manifestly had reference to the law as it stood in the general statutes, which had not been repealed, but, on the contrary, as now amended, giving the election to the legislature, is contained in the new general statutes, and is now the law of the State. *Gen. Stat.*, § 2713. The plaintiff is now superintendent of the State peni-

tentiary, both *de jure* and *de facto*, and under the law giving him the right as such officer to sue " for any debt or demand arising from the business transactions of the penitentiary," he had the right to sue. "An executor or administrator, a trustee of an express trust, or a person expressly authorized by statute, may sue," &c. *Code*, § 134.

We cannot say that Judge Wallace erred in overruling the demurrer for the alleged reason that the complaint did not state facts sufficient to constitute a cause of action. The demurrer admitted the facts stated in the complaint, which alleged that the defendant agreed with the plaintiff to hire thirty male convicts, under the provisions of the act upon the subject, for which he agreed to pay $3.66 per month per capita; that he did not, as he agreed, safely keep the said convicts, but negligently suffered five of them to escape, naming them and giving the unexpired term of the sentence of each of those who were never recaptured. And the plaintiff, as the superintendent of the penitentiary, and the person with whom the agreement was made, demanded payment of the aggregate sum of $1,100, on account of the said escapes. In our judgment this was a sufficient statement of a cause of action upon the agreement of the defendant, on the faith of which the convicts were delivered to him.

It is unnecessary to consider the alleged error of the Circuit judge in his ruling upon the statute of limitations as applicable to the claim on account of the escape of the convict David Spry, as the jury, from their verdict, must have found that the statute, even as expounded by the judge, did not apply to that one item of the demand. Upon that subject we do not think that the exception of the plaintiff is well founded. It was not error in the Circuit judge to apportion the unexpired term of the sentence of an escaped convict, when it was less than a full year. The words of the act, which we regard as incorporated in the contract, are: " The sum of fifty dollars per annum for each year of the unexpired term of the sentence of such escaped convict." We do not understand the words " for each year " as properly meaning for each part of a year, be it large or small, but for the actual time at that rate. As will hereafter more fully appear, we cannot regard the fifty dollars per annum, stip-

ulated to be paid for each convict allowed through negligence to escape, as a technical penalty to be recovered by suit on the statute, but we consider it rather compensation for the time of the convict thus lost to the State by his escape; and according to this view it would seem to be only just and proper that the State should receive compensation only for the services actually lost to it by the escape. We see no error in the charge of the Circuit judge as to the amount of compensation allowed for the escape of the convict Spry, and to this extent the judgment of the Circuit Court is affirmed.

The plaintiff's exceptions. He complains that the Circuit judge allowed the defendant at the trial to amend his answer by putting in the plea of the statute of limitations, applicable to " an action upon a statute for a forfeiture or penalty to the State," and ruled that the same so pleaded was applicable to the case, and barred recovery of the amounts claimed to be due on account of the escaped convicts, viz.: John Williams, Richard Robinson, William Talbert and James Blakely; the action as to them not having been brought within two years from the times the said convicts respectively escaped from the defendant. Was this error? Section 114 of the code provides that " an action upon a statute for a forfeiture or penalty to the State" must be brought "within two years." The first inquiry is whether the action was brought upon the statute for a penalty or on a contract made by the defendant in conformity with the terms of the statute.

It seems to us clear that the action was not brought upon the statute, but on the contract of the defendant made in conformity with its requirements. The complaint so states, and the plaintiff testified that all the convicts named were delivered to Seegers, who was to be responsible for their safe keeping. It is true that the defendant testified that he did not make an agreement to pay $50 a year for the unexpired time in the penitentiary of those that might negligently escape. But all the circumstances tend to show conclusively that he received the convicts upon such a contract and none other. Without such a contract he had no right whatever to receive the convicts at all, and might have been indicted for intermeddling with and harboring

prisoners under sentence. Lipscomb was the superintendent, and it was his especial duty to keep the custody of the convicts, unless they were let out according to law, and Seegers was at the time a director of the penitentiary and well knew the terms made necessary to hire them.

To entertain the view that Seegers got and retained control of the convicts for a year without a contract with the superintendent, would be to admit that both the superintendent and the director violated their plain duty. Under these circumstances the court cannot assume that they violated their duty in the premises or allow averments contrary thereto. That there was a contract appears also from the fact that it was reduced to writing and received by Seegers. It can not alter the case that he, after getting possession of the convicts under the contract, refused to sign the papers. If he was unwilling to comply with the terms, he should have declined to take or returned the convicts. He can not escape responsibility by simply declining to sign the contract, which only put in writing what he had already verbally agreed to, and under which contract alone he had obtained possession of the convicts. The case must be considered precisely as if Seegers had signed the contract as reduced to writing.

This contract, though not in writing, must be regarded as corresponding in its terms with the requirements of the act. It was the duty of the parties to make such a contract or none at all; and thus considered we do not think that it imposed upon the defendant technical penalties for the negligent escape of convicts, but was the agreement of the defendant himself voluntarily assumed as a necessary condition to getting control of the convicts. It being the first and highest duty of the superintendent to keep the convicts safely, the legislature did not give him authority to let them go beyond the walls of the prison without positive voluntary agreement on the part of the hirer, not only to keep them safely, but in case of escape to be responsible for $50 per annum as compensation to the State for so much of the unexpired sentence of each as was lost by such escape. This part of the agreement required by the act was not intended to be a technical penalty recoverable by the attorney-

general on the act itself, but was to become the agreement of the parties in the nature of liquidated damages for services lost.

Considering the provisions of the act as incorporated into the contract, it is said that the act itself uses the words " forfeiture " and " penalty." That is true, but we think if the act is read carefully, it will be seen that the words are not used in their strict technical sense. The words used are not conclusive of the question. As was said by Mr. Justice Coltman in *Sainter* v. *Ferguson*, 7 *Man. G. & S.* 716 : "Although the word ' penalty,' which would *prima facie* exclude the notion of stipulated damages, is used here, yet we must look at the. nature of the agreement and the surrounding circumstances to see whether the parties intended the sum mentioned to be a penalty or stipulated damages. Considering the nature of this agreement and the difficulty the plaintiff would be under in showing what specific damage he had sustained from the defendant's breach of it, I think we can only reasonably construe it to be a contract for stipulated and ascertained damages."

The question whether a sum mentioned in an agreement to be paid for a breach is to be treated as a penalty or as liquidated damages, is a question of law to be decided by the judge, upon a consideration of the whole instrument. And the principle upon which he is to proceed, is simply to ascertain the real intention of the parties, from the language they have used. *Wood's Mayne Dam.*, § 163. After citing the cases, the author in a note says : ' " To summarize, it may be said, when the damages are uncertain and not susceptible of ready ascertainment, and the sum fixed upon as damages *is not unreasonable or uncon-scionable* in view of the probable damages, and from the whole contract and the surrounding circumstances, such appears to have been the intention of the parties, such sum will be treated as liquidated damages."

Apply this rule to the case under consideration. The value of an unexpired sentence of a convict is, in its nature, "uncertain," and $50 per year for each is not " unreasonable or unconsciona-ble " in view of the probable damage, and from the surroundings, especially from the official knowledge of both parties of what was absolutely necessary, such must be considered to have been the

intention of the parties. The amount to be paid was, like ordinary hire, in proportion to the time. See *Allen* v. *Brazier & Randolph,* 2 *Bailey* 293 ; *Worrell* v. *McClinaghan,* 5 *Strobh.* 115.

The plaintiff's claim consisted of an aggregate of different amounts for five escaped convicts, viz. : John Williams, Richard Robinson, William Talbert, James Blakely and David Spry. Each distinct, somewhat in analogy to different causes of action. The plaintiff's recovery for what was due on account of the convict Spry has already been affirmed. But as to the other four convicts, viz. : Williams, Robinson, Talbert and Blakely, the Circuit judge held that the plaintiff's claim was barred by the statute of limitations applicable to an action for a penalty. In this we think there was error.

The judgment of this court is that the judgment of the Circuit Court, so far as concerns the claim on account of the escaped convicts, Williams, Robinson, Talbert and Blakely, be reversed, and to that extent the case be remanded for a new trial.